LUIS A. CARRILLO, Esq. SBN 70398
MICHAEL S. CARRILLO, Esq. SBN 258878
jmfteam@carrillofirm.com
**CARRILLO LAW FIRM, LLP**
1499 Huntington Drive, Suite 402
South Pasadena, CA 91030
Tel: (626) 799-9375/Fax: (626) 799-9380

Dale K. Galipo, Esq. (SBN 144074)
dalekgalipo@yahoo.com
Renee V. Masongsong, Esq. (SBN 281819)
rvalentine@galipolaw.com
**LAW OFFICES OF DALE K. GALIPO**
21800 Burbank Boulevard, Suite 310
Woodland Hills, California 91367
Tel: (818) 347-3333/ Fax: (818) 347-4118

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**ADA TORRES, INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST, JOSE CUENCA, INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST,**

**Plaintiffs,**

**v.**

**COUNTY OF RIVERSIDE AND DOES 1 THROUGH 20, INCLUSIVE,**

**Defendants.**

**Case No.: 5:26-cv-6632**

**COMPLAINT FOR DAMAGES:**

1. **FAILURE TO PROTECT FROM HARM (42 U.S.C. § 1983);**
2. **DEPRIVATION OF CIVIL RIGHTS, 42 U.S.C. § 1983-DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS;**
3. **DEPRIVATION OF CIVIL RIGHTS, 42 U.S.C. § 1983-*MONELL* VIOLATIONS;**
4. **DEPRIVATION OF CIVIL RIGHTS, 42 U.S.C. § 1983-MUNICIPAL LIABILITY - FAILURE TO TRAIN;**
5. **DEPRIVATION OF CIVIL RIGHTS, 42 U.S.C. § 1983 – DUE PROCESS – INTERFERENCE WITH FAMILIAL RELATIONSHIP**
6. **NEGLIGENCE;**
7. **VIOLATION OF GOVERNMENT CODE §845.6 – FAILURE TO PROVIDE IMMEDIATE MEDICAL CARE; AND**
8. **VIOLATION OF CAL CIVIL CODE SECTION 52.1**

**DEMAND FOR JURY TRIAL**

**COME NOW** ADA TORRES, individually and as successor-in-interest, and JOSE CUENCA, individually and as successor-in-interest, ("PLAINTIFFS"), for their Complaint ("COMPLAINT") against the COUNTY OF RIVERSIDE ("COUNTY"), and DOES 1 through 20, allege as follows:

**I.**

**VENUE AND JURISDICTION**

1. This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3)-(4) because Plaintiffs assert claims arising under the laws of the United States including 42 U.S.C. § 1983 and the Fourth, Eighth and Fourteenth Amendments of the United States Constitution. This Court has supplemental jurisdiction over Plaintiffs' claims arising under state law pursuant to 28 U.S.C. § 1367(a), because those claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

2. Venue is proper in this Court under 28 U.S.C. § 1391(b) because Defendants reside in this district and all incidents, events, and occurrences giving rise to this action occurred in this district.

3. On or about May 29, 2026, Plaintiffs timely and properly filed an administrative claim with Defendant, COUNTY OF RIVERSIDE. On or about June 9, 2026, Plaintiffs' claim was denied in its entirety, therefore Plaintiffs have complied with the requirements of California Government Code §§ 910 and 911.2.

4. Plaintiffs allege that this complaint was filed within the statutory requirements as mandated by California law for claims against governmental entities and agents.

///

///

///

///

///

///

## II.

## PARTIES

5. At all times relevant, this action arises from the preventable death of Ezekiel Cuenca-Torres (hereinafter "DECEDENT"), who at all times mentioned herein was an individual residing in the County of Riverside, State of California.

6. Plaintiff ADA TORRES is the mother of DECEDENT, who brings survival claims in a representative capacity on the DECEDENT's behalf as his lawful successor - in-interest pursuant to California Code of Civil Procedure §377.30. Plaintiff ADA TORRES will execute the declaration required under California Code of Civil Procedure §377.32, which will be filing in short order. Plaintiff ADA TORRES also sues in her individual capacity as the mother of DECEDENT for wrongful death damages pursuant to California Code of Civil Procedure § 377.60. Plaintiff ADA TORRES seeks both survival and wrongful death damages under federal and state law.

7. Plaintiff JOSE CUENCA is the father of DECEDENT, who brings survival claims in a representative capacity on the DECEDENT's behalf as his lawful successor - in-interest pursuant to California Code of Civil Procedure §377.30. Plaintiff JOSE CUENCA will execute the declaration required under California Code of Civil Procedure §377.32, which will be filing in short order. Plaintiff JOSE CUENCA also sues in his individual capacity as the father of DECEDENT for wrongful death damages pursuant to California Code of Civil Procedure § 377.60. Plaintiff JOSE CUENCA seeks both survival and wrongful death damages under federal and state law.

8. On information and belief, Plaintiffs allege that at all relevant times, Defendant COUNTY OF RIVERSIDE, (hereinafter "COUNTY"), was and is a municipal corporation, existing under the laws of the State of California. COUNTY is a chartered subdivision of the State of California with the capacity to be sued. COUNTY is responsible for the actions, omissions, policies, procedures, practices, and customs of its various agents and agencies, including but not limited to the Riverside County Sheriff's Department (hereinafter "RCSD"), and the Robert Presley Detention Center (hereinafter "RPDC"), and

their agents and employees. At all times relevant, COUNTY was responsible for assuring that the actions, omissions, policies, procedures, practices, and customs of the LACSD and the RPDC, and that their employees and agents complied with the laws of the State of California and the United States. COUNTY purposely conducts substantial business activities in the State of California.

9. At all times relevant, COUNTY was the employer of the Defendant DOES 1-20, inclusive.

10. Plaintiffs are informed and believe and thereon allege that Defendants sued herein as DOES 1 through 10, inclusive, are managerial, supervisorial, and policymaking employees of the COUNTY, who were acting under color of law and within the course and scope of their duties as managerial, supervisory, and policymaking employees of COUNTY in positions that include but are not limited to elected Undersheriffs, Assistant Sheriff's, Deputy Chiefs, Captains, Lieutenants, Sergeants, and Corporals who were acting with complete authority and ratification of their principal, Defendant COUNTY.

11. Plaintiffs are informed and believe and thereon allege that Defendants sued herein as DOES 11 through 20, inclusive, are Deputy Sheriffs, Correctional Officers, Doctors, Nurses, Social Workers, medical health professionals, civilian staff of the Riverside County Sheriff's Department, and the Robert Presley Detention Center. DOES 11 through 20 were at all relevant times responsible for the care, housing, observation and safety of pretrial detainees and inmates, including DECEDENT and were acting under color of state law and within the course and scope of their employment and agency with Defendant COUNTY. DOES 11 through 20 were acting with the complete authority and ratification of their principal, Defendant COUNTY.

12. In doing the acts and failing and omitting to act as hereinafter described, Defendants DOES 11 through 20 were acting on the implied and actual permission and consent of Defendants COUNTY and DOES 1-10.

13. Plaintiffs allege, on information and belief, that each of the Defendants sued herein was wrongful, deliberately indifferent, negligent, and/or otherwise responsible in

some manner for the events and happenings surrounding the death of DECEDENT. Further, one or more DOE Defendants were at all material times responsible for the hiring, training, supervision, and discipline of other defendants, including both individually named and to-be-identified DOE Defendants.

14. The acts and omissions of all Defendants were at all material times pursuant to the actual customs, polices, practices, and/or procedures of Defendant COUNTY, the Riverside County Sheriff's Department, and/or the Robert Presley Detention Center.

15. The true names or capacities of Defendants DOES 1 through 20 are unknown to Plaintiffs at this time, who therefore sue said Defendants by fictitious names. Plaintiffs allege that in doing the acts and omissions herein alleged, said DOE Defendants were employed as employees, agents, or servants of the Defendant COUNTY, and at all times herein relevant were acting within the scope and course of their employment with the Defendant COUNTY, and the acts and omissions of the said Defendants DOES 1 through 20 were the proximate cause of the injuries and losses suffered by Plaintiffs.

16. At all times mentioned herein, each Defendant was responsible in some manner or capacity for the occurrences herein alleged. Plaintiffs' damages, as herein alleged, were proximately caused by all the acts and omissions of said Defendants. Defendants, COUNTY OF RIVERSIDE, and DOES 1 through 20 are sometimes collectively referred to herein as "Defendants" and/or as "All Defendants" and such collective reference refers to all specifically named Defendants.

17. Plaintiffs allege that Defendants, COUNTY OF RIVERSIDE and DOES 1 through 20, were the agents, contractors and/or employees of each and every other Defendant, and the acts and omissions herein alleged were done by them, acting individually, through such capacity and within the scope of their authority, and with the permission and consent of each and every other Defendant and that such conduct was thereafter ratified by each and every other Defendant, and that each of them is jointly and severally liable to Plaintiff. As such, each Defendant in this Complaint is legally responsible for the acts of the others.

18. Defendant DOES 1-20 are sued in their individual capacities.

19. On information and belief, at all times relevant, the individual Defendants, including DOES 1-20, were residents of Riverside County.

## III.

## STATEMENT OF FACTS

20. On January 1, 2026, Ezekiel Cuenca-Torres ("DECEDENT") was 19 years old.

21. On or about December 17, 2025, DECEDENT Ezekiel Alexander Cuenca-Torres was arrested on charges of allegedly assaulting an officer.

22. From approximately December 2025 through January 1, 2026, DECEDENT, was detained as a pretrial detainee at Robert Presley Detention Center ("RPDC") in Riverside County.

23. Soon after his detainment, DECEDENT had a court appearance for his charges, where the judge then ordered for DECEDENT to be evaluated by a therapist.

24. By Monday, December 22, 2025, despite a court-mandated 48-hour order for DECEDENT to be evaluated by a therapist, DECEDENT had yet to be seen by a therapist.

25. During his detainment up until his tragic death, DECEDENT was in a perpetual state of mania/paranoia. Due to this paranoia, he feared the officers, guards, and other inmates, refusing to leave his cell. He feared being raped by other inmates and expressed those fears to deputies.

26. Based on information and belief, COUNTY deputies were aware that DECEDENT was manic and acting out in a state of paranoia refusing to leave his cell and in desperate need of medical attention. DOES 11-20 chose not to obtain a mental health evaluation, chose not to place DECEDENT in a safety cell, chose not to seek additional help for DECEDENT on January 1, 2026 or anytime in the time leading up to DECEDENT's death on January 1, 2026.

27. On January 1, 2026, on or around 2:00 p.m., DECEDENT was found hanging with an extension cord wrapped around his neck. DECEDENT was then cut down and

administered CPR before paramedics arrived and took over the administration of CPR.

28. DECEDENT had been hanging long enough for a cord indentation to form around his neck and for cardiac arrest to occur, ultimately ending his life.

29. DECEDENT was pronounced dead at 2:51 p.m. by paramedics on the scene.

30. The autopsy documented diffuse hypoxic/anoxic brain injury, lobar pneumonia, and cerebral venous thrombosis. It noted no clear ligature furrow or neck abrasions, aside from a scabbed chin area, bruising, and superficial wrist incisions.

31. Defendants, and each of them, through their personal knowledge, positions at Robert Presley Detention Center ("RPDC"), and/or access to inmate classification and medical information, knew or should have known that DECEDENT was experiencing a mental health crisis during the entirety of his detainment at the RPDC. Plaintiffs are informed and believe and thereon allege that Defendants, and each of them, possessed actual and constructive knowledge that DECEDENT had mental-health conditions requiring close monitoring, treatment, and safe housing.

32. Despite this knowledge, Defendants, and each of them, failed to take adequate measures to protect DECEDENT, failed to adopt or implement adequate policies or procedures for the housing, monitoring, and protection of mentally ill inmates, including DECEDENT who was undergoing a mental health crisis on January 1, 2026 and before, and failed to adequately train staff regarding identification, assessment, and safety needs of mentally ill inmates. Defendants further failed to adopt or implement policies ensuring that custody staff received complete and accurate information regarding inmates when making housing, classification, or medical decisions. These acts and omissions were undertaken in conscious disregard of an excessive and obvious risk to DECEDENT's health and safety.

33. Plaintiffs are informed and believe and thereon allege that DECEDENT was woefully inadequately supervised by Defendants. Although Defendants had the authority and obligation to make appropriate medical and housing decisions, they failed to classify and house DECEDENT appropriately, including failing to place him in specialized

protective custody, mental-health housing, or a safe housing unit. DECEDENT should have been assigned to a housing unit consistent with his mental health needs where he would have been safe from self-harm.

34. It was Defendants' deliberate indifference to DECEDENT's mental-health needs that directly led to his death. Defendants' failure to implement adequate protocols, policies, and training was a substantial factor causing the incident and forms the basis for Plaintiffs' Fourteenth Amendment and wrongful death claims. Given DECEDENT's apparent mental health needs, it was plainly and glaringly obvious that DECEDENT required continuous monitoring, clinical evaluation, management, and safe, protective housing from the moment he entered RPDC custody up until his untimely death on January 1, 2026.

35. Plaintiffs are informed and believe and thereon allege that after DECEDENT was given a court-mandated 48-hour order to be evaluated by a therapist and refused to leave his cell out of fear, Defendants, and each of them, failed to provide any meaningful mental health intervention, crisis evaluation, or suicide risk assessment, despite the obvious indicators of psychological distress. Upon the mandated 48-hour court order DECEDENT was not seen by a mental-health clinician within those 48 hours, not placed on suicide watch, not referred for psychiatric evaluation, and not monitored under any heightened observation protocol, contrary to established standards of care and basic correctional mental-health practices. Defendants instead returned DECEDENT to the same unsafe housing conditions without adequate safety checks, treatment planning, or protective measures. Plaintiffs are informed and believe and thereon allege that this failure to summon mental health staff, implement suicide prevention procedures, or provide appropriate psychiatric care constituted deliberate indifference to DECEDENT's serious medical and mental-health needs and was a substantial factor in the events leading to his death later that evening.

36. On information and belief, Defendants failed to take well-established safety measures throughout DECEDENT's incarceration at RPDC. Despite knowing that

DECEDENT was having a mental-health crisis, they did not place him in housing that would ensure supervision, heightened monitoring, and protection.

37. Defendants COUNTY and DOES 1 through 20, inclusive, owed DECEDENT a duty to protect him and to provide adequate conditions of confinement, including necessary mental-health care and medical treatment. These Defendants further had a duty to ensure that all deputies, custody personnel, and classification staff complied with Title 15 regulations, including those governing inmate screening, inmate housing determinations, adequate inmate supervision, suicide prevention, and medical and mental-health care.

38. However, COUNTY and DOES 1 through 20 failed to ensure that inmates, including inmates with serious mental-health conditions, were properly screened upon arrival at RPDC and that all required factors were evaluated when determining and approving DECEDENT's classification and housing assignment. These Defendants further failed to ensure that adequate staff, training, and facilities were maintained as required by Title 15 so that appropriate mental-health services, crisis intervention, suicide prevention, and safe housing would be available to inmates such as DECEDENT. Instead, COUNTY and DOES 1 through 20 knowingly maintained practices, customs, and policies that they had actual and constructive notice were causing ongoing violations of inmates' constitutional rights.

39. On information and belief, DOES 1 through 20 failed to intervene, failed to summon medical or mental-health assistance, and failed to take any protective action to stop the danger to DECEDENT, further exhibiting deliberate indifference to his civil rights, safety, and medical needs.

## IV.

## <u>FIRST CAUSE OF ACTION</u>

## FAILURE TO PROTECT FROM HARM

## 42 U.S.C. § 1983 FOURTH AND FOURTEENTH AMENDMENT

(All Plaintiffs against DOES 1 through 20)

40. Plaintiffs re-allege and incorporate by reference herein each and every allegation contained herein above as though fully set forth and brought in this cause of action.

41. Pretrial detainees such as DECEDENT have a Fourteenth Amendment due process right to be free from harm. *See Castro v. County of Riverside*, 833 F.3d 1060 (9th Cir. 2016) (en banc); *see also Gordon v. County of Orange*, 888 F.3d 1118, 11124-25 (9th Cir. 2018).

42. By the actions and omissions described above, Defendants DOES 1-20, as alleged herein, violated 42 U.S.C. § 1983, depriving DECEDENT of the following clearly established and well-settled constitutional rights protected by the Fourteenth Amendment to the United States Constitution: DECEDENT's right to be protected from harm while in custody as secured by the Fourteenth Amendment.

43. Defendants DOES 1 through 20, inclusive, were at all relevant times, acting under color of state law in violating DECEDENT'S constitutional rights under the Fourteenth Amendment to the Constitution of the United States.

44. Under the Fourteenth Amendment to the U.S. Constitution, no state can "deprive any person of life, liberty or property without due process of law." This federal constitutional provision conferred DECEDENT a right to be free from a deprivation of his due process by DEFENDANTS.

45. Under 42 U.S.C. § 1983, "[e]very person who, under color of any statute, regulation custom, or usage, of any State or Territory or the District of Columbia, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party inured in an action at law…"

46. It is well established that the Constitution protects a citizen's liberty interest in his or her own bodily security. *See, e.g.*, *Ingraham v. Wright*, 430 U.S. 651, 673-74 (1977); *Wood v. Ostrander,* 879 F.2d 583, 589 (9th Cir. 1989). It is also well established that, although the state's failure to protect an individual against private violence does not

generally violate the guarantee of due process, it can where the state action "affirmatively place[s] the plaintiff in a position of danger," that is, where state action creates or exposes an individual to a danger which he or she would not have otherwise faced. *DeShaney v. Winnebago County Dep't of Soc. Serv*., 489 U.S. 189, 197 (1989); *Kennedy v City of Ridgefield* 439 F.3d 1055, 1091 (9th Cir. 2006)

47. Plaintiffs allege that Defendants COUNTY OF RIVERSIDE and DOES 1 through 20, had a special relationship with DECEDENT as he was in the custody, care and control of the COUNTY while at the Robert Presley Detention Center. Plaintiffs further allege that the COUNTY OF RIVERSIDE is a public entity receiving federal funds at the time of the incident involving DECEDENT that contracted or directly employed DOES 1-20. Plaintiffs allege that Defendants COUNTY OF RIVERSIDE and DOES 1 through 20, inclusive, were prohibited from affirmatively placing DECEDENT in known or obvious danger. While in the custody of the COUNTY, Defendants COUNTY OF RIVERSIDE and DOES 1 through 20, inclusive, had an affirmative duty not to expose DECEDENT to more danger than he otherwise would have been.

48. Plaintiffs are informed and believe and based thereon allege that Defendants DOES 1 through 20, and each of them, were responsible for inmate safety, including, DECEDENT, when he was confined and in custody at the Robert Presley Detention Center. Plaintiffs allege that Defendants DOES 1 through 20's failure to adequately protect DECEDENT from the inherent dangers of being left without proper necessary medical and mental-health intervention while he was housed at RPDC. Placing DECEDENT, and other inmates, in the custody, care and control of the COUNTY OF RIVERSIDE placed them and DECEDENT at substantial risk of suffering serious harm.

49. Plaintiffs are informed and believe and based thereon allege that Defendants COUNTY OF RIVERSIDE and DOES 1 through 20, inclusive, did not take reasonably available measures to abate, reduce, or mitigate the risks of inmates such as DECEDENT from being housed in unsafe male units, from receiving inadequate supervision, and being deprived of suicide-prevention monitoring and necessary medical and mental health care

at COUNTY facilities.

50. Plaintiffs further allege that Defendants COUNTY OF RIVERSIDE and DOES 1 through 20, took no actions to protect DECEDENT from known dangers and hazards he faced as someone with mental health issues while he was in the custody, care and control of the COUNTY. Plaintiffs further allege that Defendants COUNTY OF RIVERSIDE and DOES 1 through 20, in exposing DECEDENT to inadequate supervision and absence of mental health care, acted with a deliberate indifference to DECEDENT's health, safety and medical needs.

51. Plaintiffs are informed and believe and based thereon allege that Defendant COUNTY OF RIVERSIDE and DOES 1 through 20, inclusive, were on notice that their policies, procedures, and practices, relating to the supervision and monitoring of mentally ill detainees, and the implementation of suicide prevention and mental health protocol, at COUNTY jail facilities, including at the Robert Presley Detention Center, created a substantial risk of serious harm to inmates such as DECEDENT while they were in the care custody, and control of the COUNTY OF RIVERSIDE.

52. Defendants COUNTY and DOES 1-20, were on notice that their policies, procedures, and practices for supervising and protecting inmates at the Robert Presley Detention Center were inadequate and gave rise to a substantial risk of serious harm to vulnerable detainees.

53. Because of DEFENDANTS DOES 1 through 20's failures to protect inmates at COUNTY OF RIVERSIDE jail facilities, DECEDENT suffered his untimely death.

54. Accordingly, Defendants COUNTY OF RIVERSIDE and DOES 1 through 20, subjected DECEDENT to state-created danger in violation of the Fourteenth Amendment to the U.S. Constitution and 42 U.S.C. § 1983.

55. As a direct and proximate cause of Defendants' conduct, DECEDENT suffered injuries and damages, including pre-death pain and suffering, loss of life, loss of enjoyment of life, and lost earning capacity. Plaintiffs seek survival damages on this claim as DECEDENT's successors in interest.

56. Plaintiffs are informed and thereon allege that Defendants DOES 1-20, and each of them, acted with malice toward DECEDENT, or acted with a willful and conscious disregard for the rights of DECEDENT in a despicable, vile, and contemptible manner. Therefore, Plaintiffs are entitled to an award of punitive damages and penalties allowable under 42 U.S.C. § 1983 and as provided by law. Plaintiffs do not seek punitive damages against Defendant COUNTY.

57. Plaintiffs also seek costs of suit, interest, and statutory attorneys' fees under 42 U.S.C. §1988 under this claim.

## SECOND CAUSE OF ACTION

## DEPRIVATION OF CIVIL RIGHTS – 42 U.S.C. §1983 DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS AND SAFETY

(All Plaintiffs against Defendants DOES 1 through 20)

58. Plaintiffs re-allege and incorporate by reference herein each and every allegation contained herein above as though fully set forth and brought in this cause of action.

59. Title 42 of the United States Code § 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory subjects, or causes to be subjected, any person of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws shall be liable to the party injured in an action at law, suit at equity or other proper proceeding for redress.

60. Defendants DOES 1-20, acting under color of state law, through their own individual actions and through their policies, practices and customs, deprived DECEDENT of rights, privileges, and immunities secured by the Constitution and laws of the United States, by subjecting him, or allowing others to subject him, to cruel and unusual punishment.

61. At the time of the incident, and his injuries, DECEDENT was a pretrial detainee. "A prison that deprives prisoners of basic sustenance, including adequate medical care, is incompatible with the concept of human dignity and has no place in civilized society." *Brown v. Plata*, 131 S. Ct. 1910, 1928 (1011). Accordingly, the Fourteenth Amendment to the United States Constitution protects the right of pretrial detainees to adequate medical care. Claims of pretrial detainees are analyzed under the Fourteenth Amendment Due Process Clause, rather than under the Eighth Amendment. *Bell v. Wolfish*, 441 U.S. 510, 535 n. 16 (1979); *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir.1998); *Carnell v. Grimm*, 74 F.3d 977, 979 (9th Cir. 1996); *Gibson v. Cnty. of Washoe*, Nev., 290 F.3d 1175, 1187 (9th Cir. 1002). Prison officials also have a duty to protect prisoners from violence at the hands of other prisoners. *Farmer v. Brennan*, 511 U.S. 825, 8323(1970).

62. Throughout the duration of DECEDENT's detention, he had the established right to medical care for his mental illness. At all material times, Defendants DOES 1-20, inclusive, were aware of facts that a substantial risk of harm existed with regard to individuals in-custody at the RPDC, including DECEDENT, who required competent medical professionals and properly trained deputies and corrections assistants to provide him with necessary medical and mental health care for the medical conditions that they were aware of at the time DECEDENT was taken into custody, booked and classified and that he was provided appropriate housing, adequate conditions of confinement, and adequate supervision.

63. DECEDENT's first serious medical condition was his severe mental health disorders. These conditions rendered him, among other things, unable to adequately protect himself, unable to effectively advocate for safer placement, and unable to reliably communicate the severity of his psychiatric symptoms at RPDC. DECEDENT's serious medical and mental health needs required, among other accommodations: placement in protective housing, increased suicide prevention monitoring, placement in a safety cell or mental health unit, and evaluation, treatment and continuous monitoring by qualified mental health professionals.

64. Defendants had actual and constructive knowledge of DECEDENT's serious medical and mental health condition. Defendants knew that the court had ordered a mental health evaluation within 48 hours of a court appearance and that DECEDENT was in a constant state of paranoia and refusing to leave his cell. Despite this knowledge, Defendants DOES 1-20, demonstrated deliberate indifference to DECEDENT's serious medical needs because the Defendants recklessly disregarded a substantial risk of harm to DECEDENT.

65. Defendants made intentional decisions regarding the conditions under which DECEDENT was confined his housing assignment and supervision level. These decisions denied his appropriate accommodations for his mental-health conditions and resulted in him being placed in a cell alone and unmonitored. Despite knowledge of DECEDENT's mental health needs, Defendants consciously disregarded his safety and acted with deliberate indifference for DECEDENT's serious medical needs and safety, when they engaged in acts and omissions including, but not limited to:

a. Failing to properly screen, classify and house inmates, including DECEDENT, during intake and throughout custody for issues such as mental illness, suicide risk, and vulnerability to harm.
b. Failing to provide adequate psychiatric assessment, treatment, and crisis intervention.
c. Failing to reasonably monitor and provide security to DECEDENT while housed at RPDC.
d. Failing to implement and/or enforce suicide-prevention measures, including safety checks, increased observation, or placement in a suicide-resistant cell.
e. Acting as integral participants in the violations of DECEDENT's rights or failing to intervene to prevent the violations.
f. Failing to ensure RPDC employees were properly trained to screen mentally ill inmates for appropriate classification, housing, and safety needs.
g. Employing, retaining, failing to supervise, failing to discipline, and/or failing

to discharge personnel who were incompetent or indifferent to the tasks of ensuring DECEDENT's safety, monitoring his condition, and responding to mental-health crises.

h. Failing to provide DECEDENT access to trained medical and mental-health personnel capable of treating his serious conditions.

i. Ignoring DECEDENT's serious and treatable mental-health condition, despite clear indications that he was suicidal.

j. Failing to implement adequate supervision systems necessary to detect inmates in crisis, such as DECEDENT.

k. Failing to implement a system for rapid emergency medical response to suicidal or self-harming inmates.

l. Employing officers who were deliberately indifferent to the mental-health needs of inmates.

66. Defendants did not take reasonable measures to abate the substantial risk of harm to DECEDENT and were deliberately indifferent to his mental-health condition.

67. The intentional denial of medical care by Defendants DOES 1-20, and the deliberate indifference to DECEDENT's serious medical needs by Defendants, violated DECEDENT's constitutional rights.

68. Due to the deliberate indifference of Defendants DOES 1-20 to the serious nature and life-threatening condition of DECEDENT, and their failure to timely intervene to provide medical care and failure to provide security monitoring and safety, necessary to prevent his efforts to harm himself, DECEDENT suffered preventable serious injury and harm and eventually died.

69. DECEDENT was subjected to deprivation of rights by Defendants, and each of them, acting under color of law and of statutes, ordinances, regulations, customs and usages of the Law of the United States, State of California, which rights included but are not limited to, privileges and immunities secured to DECEDENT by the Fourth and Fourteenth Amendments to the United States Constitution and the laws of the United

States, and particularly: a) his right to access to mental health and medical care and treatment for his condition; b) his right to adequate, reasonable security, monitoring, supervision, classification and housing for his mental health, each of which was also a cause of his serious injury and harm.

70. DECEDENT remained alive for an appreciable period after hanging himself and experienced pre-death pain, fear, and suffering as a result of Defendants' failure to render immediate medical or psychiatric aid.

71. As a result of the foregoing, DECEDENT suffered great trauma, physical pain and emotional distress up to the time of his death and pre-death pain and suffering.

72. Defendants' delay and failure to provide timely emergency medical and mental-health treatment to DECEDENT resulted in further significant injury and the unnecessary infliction of pain, in that they willfully disregarded that serious medical attention was needed, thereby causing DECEDENT great bodily harm and death.

73. As a result of the Defendants' misconduct, Defendants are liable for DECEDENT's injuries because they were integral participants in the deliberate indifference to DECEDENT's mental health needs and/or failed to intervene to prevent these violations.

74. As a direct and proximate cause of the aforementioned acts/failures to act of Defendants, DECEDENT was injured as set forth above. Plaintiffs bring this claim as DECEDENT's successors-in-interest as defined in § 377.11 of the California Code of Civil Procedure and seek survival damages for the violation of DECEDENT's rights. Said Defendants are each liable to Plaintiffs for compensatory damages, including survival damages (loss of life, loss of enjoyment of life, and pre-death pain and suffering) under 42 U.S.C. § 1983 and California Code of Civil Procedure § 377.30 and § 377.60. Plaintiffs also seek costs of suit and statutory attorneys' fees, pursuant to 42 U.S.C. § 1988.

75. Plaintiffs are informed and thereon allege that Defendants Does 1-20, and each of them, acted with malice toward DECEDENT, or acted with a willful and conscious disregard for the rights of DECEDENT in a despicable, vile, and contemptible manner.

Therefore, Plaintiffs are entitled to an award of punitive damages and penalties allowable under 42 U.S.C. § 1983 and as provided by law. Plaintiffs do not seek punitive damages against Defendant COUNTY.

## THIRD CAUSE OF ACTION

**Municipal Liability for Unconstitutional Custom or Policy (42 U.S.C. §1983)**

(By All Plaintiffs Against Defendants COUNTY and DOES 1 through 10)

76. Plaintiffs re-allege and incorporate by reference herein each and every allegation contained herein above as though fully set forth and brought in this cause of action.

77. Plaintiffs are informed and believe and thereon allege that, at all times herein mentioned, Defendants COUNTY and DOES 1 through 20, acted with deliberate indifference and conscious and reckless disregard to the safety, security and constitutional and statutory rights of DECEDENT and engaged in unconstitutional conduct and omissions.

78. Defendants COUNTY, and DOES 1 through 10, failed to properly train and supervise RPDC staff regarding policies, procedures, and practices necessary for the protection of inmates from risks and hazards existing when inmates have mental health crises.

79. COUNTY and DOES 1-10, failed to correct their policies, procedures, and practices despite notice of risks of significant injuries. Defendants COUNTY and DOES 1 through 20, inclusive, were deliberately indifferent to the health and safety of inmates in their care.

80. COUNTY and DOES 1-10 have failed to correct their policies which led directly to DECEDENT's death. This has been an ongoing problem within COUNTY which has led to other deaths and which has not been corrected. Had Defendants addressed this custom and/or policy, DECEDENT would still be alive. Specifically, Defendants COUNTY and DOES 1-10 custom and/or policy led to the following suicide deaths prior to DECEDENT's death:

a. On April 28, 2022, Alicia Renee Upton, age 21, died within the RPDC due to the unconstitutional custom and/or policy

b. On September 7, 2022, Robert Louis Robinson, age 41 died by suicide within the RPDC

c. On December 19, 2022, Aaron Aubrey, age 28, was found hanging and died six days later

d. On April 16, 2024, Reynaldo Ramos, age 55, died by suicide within the RPDC

e. On August 22, 2025, Ray Gonzalez, age 46, died by suicide within the RPDC.

81. Defendant DOES 11-20's failure to adequately screen and classify inmate; failure to properly house inmates, failure to provide adequate mental-health services, crisis-intervention care, and suicide-risk evaluations for inmates displaying signs consistent with mental health crises, failure to provide appropriate supervision and safety checks, failure to ensure communication of critical information among staff, and provide timely emergency intervention supports that there was a deliberate indifference to the risk of harm to DECEDENT.

82. As a direct and proximate result of Defendants' conduct, the civil rights of DECEDENT, as protected by the Fourteenth Amendment of the United States Constitution were violated. Further, DECEDENT experienced severe emotional distress, and mental anguish, physical pain, and death.

83. Defendants subjected DECEDENT to their wrongful conduct, depriving him of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of DECEDENT and others would be violated by their acts and/or omissions.

84. Plaintiffs further allege that the custom, policies, and/ practices of Defendant COUNTY allowed for inadequate inmate screening and classification, inadequate mental-health care, inadequate suicide-prevention measures, and inadequate supervision and crisis

intervention.

85. Plaintiffs are informed and based thereon allege that Defendants COUNTY, and DOES 1 through 10, inclusive, ratified, acquiesced, and condoned policies, procedures and practices that led DECEDENT to undergo a mental-health crisis, leading to DECEDENT's suicide and death.

86. Plaintiffs are informed and based thereon allege that certain unknown agents or employees of the COUNTY, allowed COUNTY employees to inadequately screen, classify, house, and supervise inmates; and to fail to provide adequate medical and mental-health care and fail to ensure communication of critical information among staff.

87. On or for some time before January 1, 2026, and continuing to the present date, Defendants COUNTY and DOE SUPERVISORS, deprived DECEDENT of the rights and liberties secured to him by the Fourth and Fourteenth Amendments to the United States Constitution, because said Defendants and their supervising and managerial employees, acted with gross negligence and with reckless and deliberate indifference to the rights and liberties of the public in general, and of DECEDENT, and persons in their class, situation and comparable position in particularly, knowingly maintained, enforced, and applied an official recognized custom, policy of:

a. Employing and retaining as sheriff's deputies, and other personnel, whom Defendants COUNTY, and DOES 1 through 10, at all times material herein knew or reasonably should have known had dangerous propensities of abusing their authority and allowing and/or facilitating the inadequate screening, classification and housing of inmates, failing to provide adequate mental-health services, failing to provide appropriate supervision, failing to ensure communication of critical information among staff, and failing to provide timely medical care, by failing to follow written COUNTY Sheriff's Department policies.

b. Permitting and ratifying the conduct of DOES 11 through 20 within the COUNTY jail facilities, and acted with deliberate indifference to the

medical and mental health needs of individuals in the custody of the COUNTY, such as DECEDENT;

c. Of inadequately supervising, training, controlling, assigning, and disciplining COUNTY's sheriff's deputies, including DOES 11 through 20, and other personnel, who Defendants COUNTY, and DOES 1 through 10, knew or in the exercise of reasonable care should have known had the aforementioned propensities and character traits of ignoring the health and safety of individuals in custody of the COUNTY.

d. By failing to adequately train deputies, including DOES 11-20, and failing to institute appropriate policies, regarding responding to DECEDENT's medical and mental health needs;

e. By having and maintaining an unconstitutional policy, custom, and practice of allowing the inadequate screening, classification and housing of inmates, and allowing the failure of its employees to provide adequate mental-health services, to provide appropriate supervision and safety checks, to ensure communication of critical information among staff, and to provide timely emergency intervention, which is also demonstrated by inadequate training regarding these subjects. The policies, customs, and practices of COUNTY, and DOES 1-10, were done with a deliberate indifference to the individuals' health, safety and rights;

f. By maintaining grossly inadequate procedures for reporting, supervising, investigating, reviewing, disciplining the intentional misconduct of Defendant COUNTY sheriff's deputies and/or, such as DOE DEPUTIES;

g. By ratifying the misconduct of Defendant COUNTY sheriff's deputies, such as DOES 11 through 20, thereby amounting to policies of inaction.

h. By maintaining grossly inadequate procedures for reporting, supervising, investigating, reviewing, disciplining and controlling the reckless and/or intentional misconduct by sheriff deputies, including DOES 11 through 20.

88. As a result of the aforementioned policies and practices of DEFENDANT COUNTY and DOES 1 through 10, DECEDENT was subjected to pain, suffering, and death.

89. It is the policy, custom, and practice of Defendant COUNTY to not objectively investigate complaints of inadequate screening, classification, housing and supervision. Further, it is the policy, custom, and practice of Defendant COUNTY to not objectively investigate complaints of failing to provide medical and mental health care, and instead, to officially claim that such incidents are justified and proper.

90. The policies, customs, and practices of Defendant COUNTY do in fact encourage COUNTY sheriff's deputies, such as DOES 11 through 20, to believe that failing to conduct adequate screening, classification, housing and supervision, and failing to provide appropriate medical and mental-health care is permissible and will be permitted by Defendant COUNTY. Defendant DOES 1 through 10 were aware of the policies, customs, and practices of Defendant COUNTY. These policies and customs of the COUNTY were the driving force that caused DECEDENT great bodily harm and death.

91. By reason of the aforementioned policies and practices of Defendants COUNTY and DOES 1 through 10, DECEDENT endured preventable physical injury, cardiac arrest, and death.

92. Defendants COUNTY and DOES 1 through 10, inclusive, together with various other officials, whether named or unnamed, had either actual or constructive knowledge of the deficient policies, practices, and customs alleged in the paragraphs above. Despite having knowledge as stated above, these defendants condoned, tolerated, and through actions and inactions thereby ratified such policies. Said defendants also acted with deliberate indifference to the foreseeable effects and consequences of these policies with respect to the constitutional rights of DECEDENT, and other individuals similarly situated.

93. By perpetrating, sanctioning, tolerating, and ratifying the outrageous conduct and other wrongful acts, Defendants COUNTY and DOES 1 through 10 acted with an intentional, reckless, and callous disregard for the rights of the life of DECEDENT's

constitutional rights. The actions of Defendants COUNTY and DOES 1 through 10, was willful, wanton, oppressive, malicious, fraudulent, and extremely offensive and unconscionable to any person of normal sensibilities.

94. Furthermore, the policies, practices, and customs implemented and maintained and still tolerated by Defendants COUNTY and DOES 1 through 10 were affirmatively linked to and were a significant influential force behind the injuries of DECEDENT.

95. As a direct and proximate cause of the aforementioned acts/failures to act of Defendants, DECEDENT, and in turn, Plaintiffs were injured as set forth above. Accordingly, Defendants are each liable to Plaintiffs for compensatory damages, including survival damages on behalf of Decedent's estate, brought by Plaintiffs as successors in interest pursuant to California Code of Civil Procedure § 377.30 and § 377.32.

96. As a direct and proximate cause of the acts and omissions of Defendants, Plaintiffs, ADA TORRES and JOSE CUENCA been deprived of the life-long loss of DECEDENT's love, companionship, comfort, care, affection, society, and moral support, and will continue to be so deprived for the remainder of their natural lives.

97. The Plaintiffs bring this claim as DECEDENT's successors-in-interest as defined in § 377.11 of the California Code of Civil Procedure and seek survival damages for the violation of DECEDENT's rights. Said Defendants are each liable to Plaintiffs for compensatory damages, including survival damages (loss of life, loss of enjoyment of life, and pre-death pain and suffering) under 42 U.S.C. § 1983 and California Code of Civil Procedure § 377.30 and § 377.60. The Plaintiffs also seek costs of suit and statutory attorneys' fees, pursuant to 42 U.S.C. § 1988.

## FOURTH CAUSE OF ACTION

**Municipal Liability – Failure to Train (42 U.S.C. § 1983)**

(By All Plaintiffs against Defendants COUNTY and DOES 1 through 10)

98. Plaintiffs re-allege and incorporate by reference herein each and every allegation contained herein above as though fully set forth and brought in this cause of

action.

99. Defendants DOES 11-20 acted under the color of law. The acts of said Defendants deprived DECEDENT of his particular rights under the United States Constitution.

100. The training policies of Defendants COUNTY and DOES 1 through 20 were not adequate to train their sheriff's deputies, including DOES 11 through 20, to handle detainee management, detainee operations, and/other routine matters involving incarceration.

101. Defendants COUNTY and DOES 1 through 10 were deliberately indifferent to the obvious consequences of their failure to train deputies adequately and other jail personnel at COUNTY jail facilities.

102. The negligent and unjustified failure of DOES 1 through 10 to supervise and respond to DECEDENT's immediate medical and mental health needs was a result of the negligent policies, practices, and training by the Defendants, COUNTY and DOES 1 through 10. These Defendants failed to ensure that COUNTY sheriff's deputies, and other jail personnel were properly trained in identifying and responding to medical and mental health emergencies, including suicide prevention, and failed to implement adequate policies to ensure timely and appropriate medical intervention for individuals in their custody. Defendants COUNTY and DOES 1 through 10 failed to objectively investigate complaints of inadequate screening, classification and housing of inmates, inadequate protection and supervision of inmates showing signs of a mental health crisis, and inadequate access to medical and mental-health services. Defendants COUNTY and DOES 1 through 10 were responsible for establishing and enforcing protocols that complied with constitutional and statutory standards for the care of incarcerated individuals, like DECEDENT.

103. The failure of Defendants COUNTY and DOES 1 through 10 to provide adequate training caused the deprivation of DECEDENT's rights by said Defendants; that is, Defendants COUNTY and DOES through 10's failure to train is so closely related to

the deprivation of the DECEDENT's rights as to be the moving force that caused the ultimate injury.

104. By failing to provide adequate training to COUNTY sheriff's deputies, including DOES 11 through 20, and other jail personnel, DOES 1-10, acted with an intentional, reckless, and callous disregard for the life of DECEDENT and his constitutional rights. Defendants DOES 1-20, each of their actions were willful, wanton, oppressive, malicious, fraudulent, and extremely offensive and unconscionable to any person of normal sensibilities.

105. By reason of the aforementioned acts and omissions of Defendants, DECEDENT suffered preventable physical injury, cardiac arrest, and death.

106. As a direct and proximate cause of the acts and omissions of Defendants, Plaintiffs, ADA TORRES and JOSE CUENCA have been deprived of the life-long loss of DECEDENT's love, companionship, comfort, care, affection, society, and moral support, and will continue to be so deprived for the remainder of their natural lives.

107. The Plaintiffs bring this claim as DECEDENT's successors-in-interest as defined in § 377.11 of the California Code of Civil Procedure and seek survival damages for the violation of DECEDENT's rights. Said Defendants are each liable to Plaintiffs for compensatory damages, including survival damages (loss of life, loss of enjoyment of life, and pre-death pain and suffering) under 42 U.S.C. § 1983 and California Code of Civil Procedure § 377.30 and § 377.60. The Plaintiffs also seek costs of suit and statutory attorneys' fees, pursuant to 42 U.S.C. § 1988.

## FIFTH CAUSE OF ACTION

## DEPRIVATION OF CIVIL RIGHTS

## INTERFERENCE WITH FAMILIAL RELATIONSHIP (42 U.S.C. § 1983)

(By all Plaintiffs against Defendants DOES 11-20)

108. Plaintiffs incorporate all foregoing paragraphs herein.

109. The Due Process Clause of the Fourteenth Amendment to the United States Constitution guarantees all persons the right to be free from state actions that deprive them

of life, liberty, or property in such a manner as to shock the conscience, including, but not limited to, unwarranted state interference with the familial relationship of DECEDENT and Plaintiffs.

110. The aforementioned actions of Defendants, along with other undiscovered conduct, shock the conscience, in that they acted with deliberate indifference to the constitutional rights of DECEDENT and Plaintiffs, and with purpose to harm unrelated to any legitimate law enforcement objective.

111. Defendants thus violated the substantive due process rights of Plaintiffs to be free from unwarranted interference with their familial relationship with DECEDENT when they consciously disregarded DECEDENT's serious medical, housing and security needs and failed to adequately supervise, monitor and protect him from bodily harm and death.

112. As a direct and proximate cause of the acts of Defendants, Plaintiffs suffered emotional distress, mental anguish, and pain. Plaintiffs have also been deprived of the life-long love, companionship, comfort, society, care, and sustenance of DECEDENT, and will continue to be so deprived for the remainder of their natural lives. Plaintiffs therefore seek compensatory and wrongful death damages under this claim in their individual capacity for their loss of familial relations with the DECEDENT.

113. The conduct of DOES 11-20 was willful, wanton, malicious, and done with conscious disregard for the rights and safety of DECEDENT and therefore warrants the imposition of punitive damages against DOES 11-20 in their individual capacities.

114. Plaintiffs also seek costs of suit, interest and statutory attorneys' fees, pursuant to 42 U.S.C. § 1988 under this claim.

## <u>SIXTH CAUSE OF ACTION</u>

## NEGLIGENCE (WRONGFUL DEATH)

## (CAL. GOV'T CODE § 844.6(d) & CAL. CODE CIV. PROC., §377.60)

(By Plaintiffs against All Defendants)

115. Plaintiffs incorporate all foregoing paragraphs herein.

116. Defendants, and each of them owed Plaintiffs and DECEDENT the duty to act with due care in the execution and enforcement of any right, law, or legal obligation. The general duties of reasonable care imposed by law and owed to Plaintiffs and DECEDENT include but are not limited to the following:

a. To provide safe and appropriate jail custody for DECEDENT, including reasonable classification, monitoring and housing, and in providing reasonable security and taking adequate measures to ensure that DECEDENT's housing is safe and adequate measures are taken to extinguish any threats or substantial risks to DECEDENT's health and safety posed by other inmates or themselves;
b. To render access and delivery of appropriate mental health and medical care, treatment and/or emergency services to DECEDENT for his mental health condition,;
c. To timely summon necessary and appropriate medical care for DECEDENT;
d. To use generally accepted law enforcement and jail procedures that are reasonable and appropriate for DECEDENT's status as an inmate who has been diagnosed with severe mental illness;
e. To ensure that all employees and third-party contractors are working within their legal scope of practice;
f. To ensure that pretrial detainee-patients who have been diagnosed with severe mental illness and/or display signs of severe mental illness receive appropriate mental health care, monitoring and supervision, especially during periods of time when the detainee-patients are moved or are placed with other detainees;
g. To ensure that all mentally ill inmates receive a treatment plan, appropriate evaluation by a psychiatrist, and continuity of care;

h. To ensure that indicators and behaviors of persons in custody in need of immediate medical care and persons with mental health issues, such as DECEDENT are properly and effectively utilized;

i. To ensure that all proper medical protocols to monitor persons in custody, such as DECEDENT, who suffer from mental illness and other medical conditions requiring attention are followed;

j. To ensure that the COUNTY provides the training necessary to prevent suicide incidents in custody of inmates;

k. To refrain from violating Plaintiff's rights as guaranteed by the United States and California Constitutions, as set forth above, and as otherwise protected by law.

117. Defendants, through their acts and omissions, breached each every one of the aforementioned duties owed to Plaintiffs and DECEDENT and were negligent in the performance of their duties and this negligence caused the death of DECEDENT. The actions and inactions of Defendants were negligent and reckless, including but not limited to:

a. Negligent housing placement of DECEDENT while Defendants knew that DECEDENT was mentally ill and should be placed in a secure and safe housing;

b. the negligent tactics and handling of the erroneous housing placement;

c. the failure to ensure that adequate numbers of employees with appropriate education and training were available to meet the needs of and protect the rights of DECEDENT;

d. the negligent failure to assign DECEDENT to a safety cell;

e. the negligent classification of DECEDENT;

f. the failure to monitor vulnerable individuals including DECEDENT as to whether they could be a danger to themselves;

g. the failure to change the classification of inmates who are erroneously classified, including DECEDENT to and/or the failure to place those inmates in protective custody.

118. Defendants acting within the course and scope of their employment with the COUNTY had a duty to assure the competence of their employees/agents, but breached their duty and were negligent in the performance of their duties by selecting, hiring, training, reviewing, periodically supervising, failing to supervise, failing to evaluate the competency of their deputies, counselors, physicians and/or employees and/or agents and retaining their Defendant deputies, counselors, physicians and/or employees and/or agents. This breach of the duty of careful selection, hiring, training, review, supervision, periodic evaluation of the competency, and retention of such officers, counselors and other staff created an unreasonable risk of harm to persons such as DECEDENT.

119. Defendants, and each of them, failed to exercise the degree of care and caution that a reasonable and prudent person would exercise under like conditions and circumstances. Defendants failed to conform to a certain standard of conduct for the protection of DECEDENT against unreasonable risk of injury and death. The failure exposed DECEDENT/Plaintiffs to an unreasonable risk of harm.

120. Defendants undertook the responsibility of providing correctional services to DECEDENT wherein Defendants should have recognized and determined DECEDENT's proper housing and failure to otherwise exercise reasonable care, DECEDENT suffered death, to his and Plaintiffs' damage.

121. DECEDENT was particularly vulnerable in light of his incarceration and severe mental illness and relied on Defendants (who had control over him), for protection.

122. As a direct and legal result of the aforesaid negligence, carelessness and unskillfulness of Defendants, and each of them, and as a result of their breach of duty of care to DECEDENT, he hung himself and ultimately died. Also as a direct and proximate results of Defendants' conduct as alleged above, Plaintiffs have been deprived of the life-

long love, companionship, comfort, society, care and moral support of DECEDENT, and will continue to be so deprived for the remainder of their lives.

123. Defendant COUNTY is vicariously liable for the violations of state law and the conduct of its officers, deputies, employees, agents, including individual named Defendants, who are the employees of each municipality, pursuant to California Government Code §§ 815.2, 820, and 845.6. Government Code § 820(a) provides that except as otherwise statutorily provided, "a public employee is liable for injury caused by his act or omission to the same extent as a private person." Subdivision (a) of § 815.2 provides that the entity "is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would … have given rise to a cause of action against that employee…" The general rule is that an employee of a public entity is liable for the employee's torts to the same extent as a private person § 820(a); and the public entity is vicariously liable for any injury which its employee causes §815.2(a) to the same extent as a private employer Government Code § 815(b). The COUNTY is liable for the acts of its own employees Defendants DOES 1-20.

124. Defendants are each liable to Plaintiffs for compensatory damages, including both survival damages (loss of life, loss of enjoyment of life, and pre-death pain and suffering) pursuant to California Code of Civil Procedure § 377.30, non-economic damages, and wrongful death damages pursuant to California Code of Civil Procedure § 377.60. Plaintiffs bring this claim as DECEDENT's successors-in-interest as defined in Section 377.11 of the California Code of Civil Procedure and seek both survival and wrongful death damages for the violation of DECEDENT's rights.

**SEVENTH CLAIM FOR RELIEF**

**VIOLATION OF CALIFORNIA GOV'T CODE § 845.6**

**FAILURE TO SUMMON IMMEDIATE MEDICAL CARE**

(By all Plaintiffs Against All Defendants)

125. Plaintiffs incorporate all foregoing paragraphs herein.

126. By virtue of the foregoing, Defendants knew or had reason to know that DECEDENT was in need of immediate medical care from the time he was remanded into the custody of the RPDC up until the time DECEDENT ultimately died. Defendants knew or should have known that DECEDENT required immediate medical attention as DECEDENT had voiced his paranoia and delusions and required immediate medical care up until the time of his death.

127. DECEDENT suffered from serious and obvious medical and mental health conditions that put the staff on notice that DECEDENT needed proper medical care, proper housing and attention as well as greater supervision and protection but DECEDENT was not given such care.

128. Defendants, and each of them, were well aware that as a result of their failure to take appropriate corrective measures, the RPDC's conditions of confinement, the lack of appropriate medical care and housing, their failure to listen to inmates purely on the basis of the inmates being mentally disabled, and their failure to stop self-harming behavior, placed DECEDENT as a substantial risk of harm including death.

129. Defendants, through their acts and omissions, breached each every one of the aforementioned duties owed to Plaintiffs and DECEDENT and were negligent in the performance of their duties and this negligence caused the death of DECEDENT by failing to provide safe and appropriate jail custody, including appropriate conditions of confinement and housing for DECEDENT.

130. The failure to provide adequate housing, adequate medical care and adequate supervision, proximately caused DECEDENT's death.

131. Defendant COUNTY is vicariously liable for the violations of state law and the conduct of its officers, deputies, employees, agents, including individual named Defendants, who are the employees of each municipality, pursuant to California Government Code §§ 815.2, 820, and 845.6. Government Code § 820(a) provides that except as otherwise statutorily provided, "a public employee is liable for injury caused by his act or omission to the same extent as a private person." Subdivision (a) of § 815.2

provides that the entity "is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would … have given rise to a cause of action against that employee…" The general rule is that an employee of a public entity is liable for the employee's torts to the same extent as a private person § 820(a); and the public entity is vicariously liable for any injury which its employee causes §815.2(a) to the same extent as a private employer Government Code § 815(b). The COUNTY is liable for the acts of its own employees Defendants DOES 1-20.

132. Defendants are each liable to Plaintiffs for compensatory damages, including both survival damages (loss of life, loss of enjoyment of life, and pre-death pain and suffering) pursuant to California Code of Civil Procedure § 377.30, non-economic damages, and wrongful death damages pursuant to California Code of Civil Procedure § 377.60. Plaintiffs bring this claim as DECEDENT's successors-in-interest as defined in Section 377.11 of the California Code of Civil Procedure and seek both survival and wrongful death damages for the violation of DECEDENT's rights.

## EIGHTH CLAIM FOR RELIEF

### Violation of Cal. Civil Code § 52.1

(Plaintiffs against DOES 11-20 and COUNTY)

133. Plaintiffs incorporate by reference the allegations set forth above.

134. The Bane Act, California Civil Code § 52.1, prohibits any person, whether or not acting under color of law, from interfering by threat, intimidation, or coercion with the exercise or enjoyment of an individual's constitutional rights.

135. When DOES 11-20 engaged in the foregoing conduct, they interfered with DECEDENT's civil rights to be free from unreasonable searches and seizures, due process, equal protection of the laws, medical care, and life, liberty, and property. DOES 11-20 intentionally engaged in the foregoing conduct, demonstrating a reckless disregard for DECEDENT's constitutional rights.

136. DOES 11-20 acted with the purpose and effect of interfering with those rights through coercive and deadly means.

137. At all relevant times, DOES 11-20 were acting within the course and scope of their employment with the COUNTY. Thus, Defendant COUNTY is vicariously liable for the wrongful acts of DOES 11-20 pursuant to California Government Code § 815.2(a), which provides that a public entity is liable for injuries caused by its employees acting within the scope of their employment if the employee would be personally liable.

138. By reason of the aforementioned acts and omissions, Plaintiffs have suffered loss of the love, companionship, affection, comfort, care, society, training, guidance, and past and future support of DECEDENT. The aforementioned acts and omissions also caused DECEDENT's pre-death pain and suffering, loss of enjoyment of life, loss of life, and death.

139. Accordingly, Defendants COUNTY and DOES 1-20 are liable to Plaintiffs for compensatory damages under § 1983.

140. Plaintiffs bring this claim individually and in their capacities as successor-in-interest to DECEDENT pursuant to California Code of Civil Procedure § 377.30. Plaintiffs seek survival damages on this claim, including but not limited to DECEDENT's pre-death pain and suffering, emotional anguish, loss of life, loss of enjoyment of life, and any related medical and funeral expenses.

141. The conduct of DOES 11-20 was malicious, wanton, and oppressive, and carried out with conscious disregard for the rights and safety of DECEDENT, entitling Plaintiffs to an award of punitive damages against DOE DEPUTIES in their individual capacities.

142. On this claim, Plaintiffs also seek attorneys' fees, including a multiplier, and costs, under California Civil Code § 52.1.

# PRAYER FOR RELIEF

WHEREFORE, Plaintiffs ADA TORRES and JOSE CUENCA request relief on their own behalf, and according to proof, against each Defendant:

1. For general and compensatory damages against each Defendant, jointly and severally, in an amount according to proof;
2. Special damages against each Defendant, jointly and severally, in an amount according to proof;
3. For survival damages recoverable on Plaintiffs' federal civil-rights claims under 42 U.S.C. § 1983 for the deprivation of DECEDENT's own constitutional rights, brought by Plaintiffs as DECEDENT's successors in interest pursuant to California Code of Civil Procedure §§ 377.30 and 377.32, including, to the extent permitted by law, damages for DECEDENT's pre-death pain and suffering, loss of enjoyment of life, and loss of life, in an amount according to proof at trial. Plaintiffs do not seek survival damages on any state-law cause of action;
4. For wrongful-death damages recoverable by Plaintiffs individually as DECEDENT's heirs pursuant to California Code of Civil Procedure § 377.60, in an amount according to proof at trial;
5. For punitive and exemplary damages against each DOE Defendant, (and not against Defendant COUNTY OF RIVERSIDE), in an amount according to proof;
6. For costs of suit and reasonable attorneys' fees pursuant to 42 U.S.C. §1988, California Code of Civil Procedure §§ 1021.5, 52.1, and as otherwise authorized by statute or law; and
7. For such other and further relief as the Court may deem just, proper, and appropriate.

Dated: November 18, 2026

Respectfully submitted,

**CARRILLO LAW FIRM, LLP**

By: __________________________
MICHAEL S. CARRILLO
*Attorney for Plaintiffs*

DATED: November 18, 2026

**THE LAW OFFICES OF DALE K. GALIPO**

By: /s/ *Dale K. Galipo*
Dale K. Galipo
Renee V. Masongsong
Attorneys for *Plaintiffs*

## DEMAND FOR JURY TRIAL

Plaintiffs hereby request a jury trial in this action.

Dated: November 18, 2026

Respectfully submitted,

**CARRILLO LAW FIRM, LLP**

By: ______________________
MICHAEL S. CARRILLO
*Attorney for Plaintiffs*

DATED: November 18, 2026

**THE LAW OFFICES OF DALE K. GALIPO**

By: /s/ *Dale K. Galipo*
Dale K. Galipo
Renee V. Masongsong
Attorneys for *Plaintiffs*